JOSEPH E. SCHWAB, Respondent, *v.* E. G. POTTER COMPANY et al., Appellants.

Corporations — powers of stock corporations conferred and limited by statute — invalid attempt to create new corporation to take property of existing corporation.

In the absence of fraud or bad faith, courts have nothing to do with the internal management of business corporations, provided they keep within their corporate powers.

The minority directors or stockholders of a corporation cannot come into court upon allegations of a want of judgment or lack of efficiency on the part of the majority and change the course of administration. Corporate elections furnish the only remedy for internal dissensions, as the majority must rule so long as it keeps within the powers conferred by the charter.

Corporations are created by statute and have no powers except those conferred by statute directly or indirectly. Whatever is done by a corporation without authority is done in violation of law.

Details of a proposed plan by which a majority of the stockholders of a corporation authorized, empowered and directed its directors to create a new corporation in which the old corporation should be the only stockholder with only the capital of the old corporation, examined, and *held*, to be an evasion of the law, which does not permit one corporation to create another, endow it with capital from its own assets and take all its shares of stock in exchange and hold them for sale. A minority stockholder who opposed the scheme is entitled to an injunction, even without alleging injury or the certainty thereof in the future. That the agreement to sell was "ratified" by two-thirds of the stockholders does not validate the method of selling as to any stockholder who objected, since ratification may confirm a voidable act, but not one utterly void.

*Schwab* v. *Potter Co.*, 129 App. Div. 36, affirmed.

(Argued February 10, 1909; decided March 2, 1909.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 11, 1908, which reversed an interlocutory judgment of Special Term overruling a demurrer to the answer and sustained such demurrer.

The case made by the complaint is substantially as follows: The defendant, "E. G. Potter Company," is a domestic corporation organized in 1905 for a purpose not disclosed, with a capital stock of $350,000, divided into 3,500 shares of the par value of $100 each. Three thousand shares have been issued and are outstanding, but the remainder have not been issued.

On the 31st of December, 1907, said company owned a parcel of real estate in the city of New York known as 477 Fifth avenue, with an office building thereon six stories in height. Said property, being all the real estate owned by the company, was subject to a mortgage thereon of $350,000, but was otherwise free from incumbrance.

On the day last named " said company, at a special meeting
of its stockholders called for the purpose    *    *    *    passed a
resolution" the material portions of which are as follows:
" Resolved, that the board of directors of this company be and
they hereby are authorized, empowered and directed to cause
to be organized a corporation at the expense of this company
under the laws of the State of New York, with a capital stock
of $100,000, with the name 'Library Realty Company,' or
such other name as may be satisfactory to the officers of this
company, for the purpose of acquiring the real estate of this
company, No. 477 Fifth Avenue, in consideration of the
issuance to this company of all the capital stock of said new
corporation;    *    *    *    That the board of directors be and
they are hereby authorized, empowered and directed to trans-
fer to said new corporation when formed, the equity in the
real estate of this company known as 477 Fifth Avenue, sub-
ject to the existing mortgage thereon amounting to $350,000
and to receive in exchange for said equity in said real estate
all the capital stock of said new corporation to be formed,
viz.: capital stock of the par value of $100,000 ;    *    *    *
That the board of directors of this company be and they
hereby are authorized, empowered and directed to cause the
said $100,000 par value of stock of said new corporation
when acquired by this company to be offered by proper
notice to the stockholders of this company for subscription at
par, each stockholder of this company to have the right to
subscribe for an amount of the stock of the new corporation
at par equal to one-third of the par value of said stockholders'
holdings of this company, each stockholder not wishing to
subscribe to have the right to assign his rights to so subscribe,
and, in the event of failure of any stockholder or his assignee
to so subscribe, his rights to subscribe to terminate and the
company to have the right to receive subscriptions for all or
any part of such unsubscribed for stock in the new corpora-
tion from the stockholders of this company or from outside
parties, the time in which to subscribe to be limited as the
directors may deem best and the said subscription to be in

cash as follows * * * That the board of directors be and they hereby are authorized, empowered and directed to do or cause to be done all acts that may be necessary, convenient or desirable in order to carry out the foregoing resolutions and to properly safeguard the rights of this company and of the stockholders to the stock of the new company."

This resolution was adopted by a vote of 2,450 shares in favor as against 550 opposed, after the stockholders in attendance at the meeting had been furnished with a statement of the assets and liabilities of the company in which said real estate is valued at the sum of $498,301.90, less $350,000, the amount of the mortgage thereon. The plaintiff subsequently had the property appraised by competent and reputable real estate dealers familiar with the values of real property in the locality in question, who reported it worth the sum of $525,000, said sums being respectively $48,000 and $75,000 " in excess - of the prices at which it is proposed to convey the same to the corporation."

The rest of the assets, valued at about $100,000, were described in said statement as " merchandise in store, fixtures in store, labor on contracts in progress, etc." The bills and accounts owing by the corporation amounted to $98,199.23, and while a surplus of $1,642.97 was reported, unless the equity in the real estate was worth more than $100,000, the sum at which it was proposed to sell it, there was not only no surplus, but the capital was impaired to the extent of $46,658.03.

The plaintiff was one of the original corporators of the defendant company and has owned 100 shares of its capital stock from the outset, having paid $10,000 in cash therefor. He voted and protested against the adoption of said resolution, and, alleging that $100,000 is an inadequate price for the equity in the real estate, he brought this action in behalf of himself and the other dissenting stockholders, to restrain the company, its directors and officers from taking the proposed action, upon the ground that it " is illegal and calculated to injuriously affect the rights of " the minority. The complaint

contains no express allegations of fraud or bad faith. It alleges that the directors all favor the plan and that they are about to carry it into effect.

The defendants answered, and the following is a copy of their second and third separate defenses: "*Second.* That it was necessary to sell the property at said sum of $450,000, or even less, if said price could not have been obtained, to conserve the interests of the stockholders of the defendant company." "*Third.* That the agreement to sell the property pursuant to the resolution marked in the complaint 'Exhibit A,' was ratified and confirmed by stockholders representing over two-thirds of the capital stock of the company."

To these defenses the plaintiff demurred on the ground that each is insufficient in law upon the face thereof. The court at Special Term overruled the demurrer, holding that the answers were good only because the complaint was bad, but the Appellate Division, by a vote of three to two, reversed the interlocutory judgment and sustained the demurrer upon the ground that the complaint was good and the answers bad.

The defendants appealed to this court by permission of the Appellate Division, which certified the following question for decision: " Does the complaint state facts sufficient to constitute a cause of action ? "

*Graham Sumner* for appellants. The approval of the transaction by a majority of the stockholders was binding upon the plaintiff, unless the transaction was *ultra vires* or a fraud upon the corporation or the minority stockholders. (*Gamble* v. *Q. C. W. Co.*, 123 N. Y. 91; *Flynn* v. *B. C. R. R. Co.*, 158 N. Y. 493; *Burden* v. *Burden*, 159 N. Y. 287; *C. Ins. Co.* v. *N. Y. & H. R. R. Co.*, 187 N. Y. 225; *Colby* v. *E. T. Co.*, 124 App. Div. 226; *Hart* v. *Ogdensburg*, 89 Hun, 316; *Metr. E. Ry. Co.* v. *Manh. E. Ry. Co.*, 11 Daly, 373; *Barr* v. *N. Y., L. E. & W. Ry. Co.*, 125 N. Y. 263; *Hawes* v. *Oakland*, 104 U. S. 450.) The transaction was not *ultra vires*. (*Einstein* v. *R. G. & E. Co.*, 146 N. Y. 47; *Burden* v. *Burden*, 159 N. Y. 287; *Barry* v. *M. E. Co.*, 1

Sandf. 280 ; *Le Grand* v. *M. M. Assn.*, 80 N. Y. 638 ; *B. H. R. R. Co.* v. *City of Brooklyn*, 152 N. Y. 244.) The transaction was not a fraud upon the defendant company or the minority stockholders. (*Gamble* v. *Q. C. W. Co.*, 123 N. Y. 91.)

*George W. Morgan, Henry H. Abbott* and *John G. Saxe* for respondent. Any plan providing directly or indirectly for an assessment of stockholders is illegal. (Cook on Corp. §§ 241, 242 ; Purdy's Beach on Priv. Corp. § 336 ; Clark & Marshall on Priv. Corp. § 402 ; *Moore* v. *N. J. L. Co.*, 25 J. & S. 1 ; *Sullivan County Club* v. *Butler*, 26 Misc. Rep. 306 ; *Enterprise Ditch Co.* v. *Moffitt*, 45 L. R. A. 647.) The proposed plan amounts to an enforced assessment against dissenting stockholders. (*Kent* v. *Q. M. Co.*, 78 N. Y. 159.) The proposed plan is not the less an enforced assessment because it resembles the ordinary method of raising funds by an increase of capital stock. (White on Corp. § 44 ; Thomp. on Corp. 10 ; *Mechanics' Bank* v. *N. Y., etc., R.*, 13 N. Y. 599, 617, 618 ; *Kent* v. *Q. M. Co.*, 78 N. Y. 159 ; *Sutherland* v. *Olcott*, 95 N. Y. 93, 100 ; *Einstein* v. *R. G. Co.*, 146 N. Y. 46, 53 ; *Ernst* v. *M. I. Co.*, 24 Misc. Rep. 583 ; *People* v. *P. C. Co.*, 10 How. Pr. 543 ; *Lathrop* v. *Kneedland*, 46 Barb. 432 ; *Peck* v. *Elliott*, 38 L. R. A. 616.) The majority stockholders in a corporation have not the power to adopt any plan whereby the minority are compelled to elect between entering into contractual relations with a new company and some other alternative by which they may lose a portion of the value of their stock. (7 Thomp. on Corp. § 8269 ; *Mason* v. *P. M. Co.*, 133 U. S. 50 ; *People* v. *Ballard*, 134 N. Y. 269 ; *Frothingham* v. *Barney*, 6 Hun, 366 ; *Taylor* v. *Earle*, 8 Hun, 1 ; *People* v. *A. A. Co.*, 60 App. Div. 389 ; *Jacobus* v. *D. S. Co.*, 94 App. Div. 366.)

Vann, J. The main question presented by this appeal is whether the proposed transaction is beyond the powers of the defendant corporation, for it is well established that in the

absence of fraud or bad faith courts have nothing to do with the internal management of business corporations, provided they keep within their corporate powers. (*Gamble* v. *Queens County Water Co.*, 123 N. Y. 91 ; *Flynn* v. *Brooklyn City R. R. Co.*, 158 N. Y. 493, 507.) Thus we said in the case last cited : " Whatever may lawfully be done by the directors or stockholders, acting through majorities prescribed by law, must of necessity be submitted to by the minority, for corporations can be conducted upon no other basis. All questions within the scope of the corporate powers which relate to the policy of administration, to the expediency of proposed measures, or to the consideration of contracts, provided it is not so grossly inadequate as to be evidence of fraud, are beyond the province of the courts. The minority directors or stockholders cannot come into court upon allegations of a want of judgment or lack of efficiency on the part of the majority and change the course of administration. Corporate elections furnish the only remedy for internal dissensions, as the majority must rule so long as it keeps within the powers conferred by the charter."

The complaint does not disclose the purposes for which the defendant corporation was organized, nor set forth its corporate powers except as it may be inferred from the statement of assets and liabilities that it carries on a manufacturing business, while the new corporation apparently was to be a " realty " company. If, however, no corporation in this state is authorized to organize another, divide its assets with it and take in exchange its entire capital stock, then the proposed plan is *ultra vires* and the execution thereof may be restrained by injunction.

Corporations are created by statute and have no powers except those conferred by statute, directly or indirectly. (L. 1892, ch. 687; L. 1895, ch. 672, § 10.) There is no statute in this state which directly authorizes one corporation to organize another and, as we think, such action is not indirectly authorized by any reasonable inference from the most extensive powers committed to any class of corporations known to

our law. Corporations are organized by natural persons, acting under the direction of a statute, and they only can become corporators, directors or officers. "Artificial persons," without brain or body, existing only on paper through legislative command and incapable of thought or action except through natural persons, cannot create other "artificial persons," and those, others still, until the line is so extended and the capital stock so duplicated and reduplicated, as to result in confusion and fraud. If, in the case before us, the proposed plan is carried into effect, the old corporation will be the only stockholder of the new corporation when it comes into being, which is the time to test its legality, and the entire capital stock of the latter will have been taken from the assets of the former. After the old corporation has thus split itself into two corporations, both together will have only the capital that the old corporation had before. Not a dollar of new capital will have been contributed either in money or property and only when the old corporation sells to subscribers or outsiders,— and it is not alleged that it will be able to sell to either,— all or a part of the shares of stock, issued to it by the new, can any money come from the transaction. This shows that the purpose of the strange action proposed is to increase the capital stock of the old company without complying with the provisions of the statute governing the subject. The increase is to be obtained by what is in effect a forced assessment upon the full paid and non-assessable shares of the stockholders, for unless they take new stock they lose a material part of their investment, although something they do not want is given in exchange. Thus they are virtually compelled by an unlawful scheme to enter into new contractual relations with strange parties. (*Mason* v. *Pewabic Mining Co.*, 133 U. S. 50.) This would be an obvious evasion of the law which the courts will restrain when applied to by the proper party. As was well said by the presiding justice below in a useful opinion : " But it is evident from the allegations of this complaint and from the inferences that fairly may be drawn from such allegations that what was in the contemplation of the directors

and majority stockholders of the defendant corporation was not to have that corporation make an actual sale of the real estate to another corporation and receive shares of stock as the consideration therefor, but to resort to a device by which to increase its capital by dismembering itself and organizing another corporation of which it should be the only stockholder, and thus evade the provisions of the statute relating to the increase of the capital stock of a corporation. The defendant corporation, by the resolution, is authorized and *directed* to create a new corporation at the expense of the old one. What it is to do, therefore, is to be a corporate act done in its capacity as a corporation. Instead of increasing its capital stock in the manner provided by law, it is to separate its assets, deliver one portion of them to its own creature, capitalize that portion at a fixed valuation, and receive back all the shares of stock issued by its creature ; and there that transaction really ends. Affording an opportunity to the stockholders of the old corporation to subscribe to the stock of the new one is merely an offer to them to buy from the old corporation this new stock after it comes into the possession of the old corporation." (129 App. Div. 36, 40.)

We cannot assume from the allegations of the complaint that the old corporation will be able to sell the shares of new stock when issued as fully paid and delivered to it. Apparently it has not been able to sell all its own stock, for 500 shares of the amount authorized have not been issued. It is possible, therefore, that the old corporation will be compelled to permanently hold a part at least of the new shares, while the new corporation will have no individual stockholders to act as officers or directors. The law permits no such anomaly as one corporation organized by another corporation, which furnishes all its capital, takes all its shares of stock and holds them for sale. The new organization could never have a valid existence, for the disposition of the shares by the old corporation would not validate an illegal charter.

Section forty of the Stock Corporation Law does not aid the defendants. That statute authorizes a stock corporation,

27

if permitted by its charter, to acquire, hold and dispose of shares of stock issued by another corporation, and in any case to acquire, hold and dispose of shares of stock issued by certain classes of corporations, including those engaged in a similar business and those with which it might be consolidated. (L. 1892, ch. 688, § 40.) It does not permit one corporation to create another, endow it with capital from its own assets and take all its shares of stock in exchange Moreover, it is not alleged in the complaint that the defendant company is authorized by its charter to acquire stock in another corporation, or that it is engaged in a business similar to that of the corporation it proposes to organize.

Corporations cannot resort to ingenious and original methods of action with the freedom of individuals, for they are confined to those expressly authorized by statute and such as are incidental thereto and necessary to carry them into effect. If the purpose of the old corporation was to increase its capital stock, the object was lawful but the method was unlawful and this is true if its object was merely to sell its real estate. Whatever the purpose may have been, the plan was unlawful, because it would have caused an increase of the capital stock of the corporation by an unauthorized method. While the majority stockholders, or the directors, acting as individuals, could have organized the new corporation, they could not use the real estate of the old corporation to provide it with capital stock, for that was not their property. According to the scheme adopted, however, the majority stockholders were not to effect the new organization, but the board of directors, acting as such, were "authorized, empowered and *directed* to cause" the new corporation to be organized, "at the expense of the old" and by a division of its assets. This was beyond the powers of the corporation, its stockholders and directors. Whatever is done by a corporation without authority is done in violation of law, for all action, not authorized directly or indirectly, is prohibited. (General Corporation Law [L. 1890, ch. 563, as amended], § 10.) Any minority stockholder who opposed the scheme

was entitled to an injunction, even without alleging actual injury, or the certainty thereof in the future, for he is entitled to stand on his legal rights and may refuse to accept "something better" in exchange. His legal right was to continue a member of one corporation and not to be forced into the membership of a second corporation, all the capital of which was to be taken from the assets of the former. The plaintiff is now the equitable owner of one-thirtieth of the assets of the defendant company. By the proposed plan he will be deprived of his one-thirtieth interest in the real estate and either lose it altogether or be forced to buy stock in another company, organized without the sanction of law, in order to save himself. That would in effect be a forced sale by the corporation to its own stockholders, and would result in an increase of the capital stock by an unauthorized method.

If we have reasoned correctly thus far, it is obvious that the allegations in the second and third divisions of the answer constitute no defense. Even if a sale of the real estate was "necessary," as alleged in the second defense, that did not permit the organization of a corporation without authority, nor justify the spoliation of the defendant company in order to give it capital; and, if the agreement to sell was "ratified" by two-thirds of the stockholders, as alleged in the third defense, that did not validate the method of selling, as to any stockholder who objected. Ratification may confirm a voidable act, but not one utterly void.

We think that the complaint sets forth a good cause of action and that the answer, so far as before us, sets forth no defense.

The order appealed from should be affirmed, with costs, with leave to the defendants to plead over within twenty days on payment of costs, and the question certified answered in the affirmative.

Cullen, Ch. J., Haight, Werner, Willard Bartlett, Hiscock and Chase, JJ., concur.

Order affirmed.