VENNER v. NEW YORK CENT. R. CO. et al.

(Supreme Court, Special Term, Westchester County.　April 24, 1916.)

1. MONOPOLIES ⚙═16(2)—RAILROADS—CONSOLIDATION—POWER.

The New York Central & Hudson River and the Lake Shore Railroads, extending from New York to Buffalo and Buffalo to Chicago, respectively, are continuous or connected lines, under Railroad Law (Consol. Laws, c. 49) § 140, permitting consolidation.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 12; Dec. Dig. ⚙═16(2).]

2. MONOPOLIES ⚙═16(2)—RAILROADS—CONSOLIDATION—POWER.

The ownership by the successor of consolidating railroad companies of the majority of the stock of partially parallel and potentially competing railroads, such as the Michigan Central, Big Four, and Nickel Plate, in the absence of other showing of monopolistic intent, was not a valid objection to the consolidation.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 12; Dec. Dig. ⚙═16(2).]

3. COURTS ⚙═8—JURISDICTION—PENAL LAWS OF OTHER STATES—CONSOLIDATION OF RAILROADS.

The statutes of other states forbidding consolidation of parallel and competing railroads are penal in their nature and will not be enforced by the courts of this state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 18, 19; Dec. Dig. ⚙═8.]

4. LIMITATION OF ACTIONS ⚙═ 36(1)—EQUITABLE RELIEF.

Where leases of railroads claimed to be parallel and competing are attacked, the undisturbed possession of the properties thereunder for 41 and 28 years, respectively, ripened into a right that under statutes of limitation could not be challenged by a minority stockholder attacking the consolidation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 168–170, 176, 178–181; Dec. Dig. ⚙═36(1).]

5. CORPORATIONS ⚙═377(2)—SALES AND CONSOLIDATIONS—APPROVAL OF PUBLIC SERVICE COMMISSION.

Purchases of stock of other railroads, approved by the Public Service Commission, will not be set aside by the courts in a collateral proceeding.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1532; Dec. Dig. ⚙═377(2).]

6. COURTS ⚙═489(8)—JURISDICTION—UNLAWFUL COMBINATIONS.

It is not the province of a state court, at the suit of a private individual, to employ the injunctive powers of the court to prevent any alleged violation of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1913, §§ 8820–8830), called the Sherman Act.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ⚙═489(8).]

7. MONOPOLIES ⚙═24(2)—REMEDIES—UNLAWFUL COMBINATIONS—RAILROADS.

In a suit to undo the consolidation of the New York Central and Lake Shore systems, *held*, that the evidence did not show a violation of the Sherman Act by restraint of trade or monopoly of transportation.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. ⚙═24(2).]

Injunction by Clarence H. Venner, doing business as C. H. Venner & Co., against the New York Central Railroad Company, as successor

⚙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to the New York Central & Hudson River Railroad Company, and others. Dismissed.

William A. Ulman, of New York City (Elijah N. Zoline, of Chicago, Ill., of counsel), for plaintiff.

Alexander S. Lyman, of New York City, for all defendants except Michigan Cent. R. Co. and James Stillman.

Thomas Emery, of New York City (Walter C. Noyes and Albert H. Harris, both of New York City, and John F. Brennan, of Yonkers, of counsel), for defendant Michigan Cent. R. Co.

MORSCHAUSER, J.   [1] The plaintiff, as a minority stockholder of the Michigan Central Railroad Company, and as a stockholder of the late New York Central & Hudson River Railroad Company and the Lake Shore & Michigan Southern Railway Company, brings this action for injunctive relief for the primary purpose of undoing a consolidation of the two last-named railroads with nine other smaller and subsidiary connecting lines to form a new corporation known as the New York Central Railroad Company. The railroad of the former New York Central & Hudson River Railroad Company extends from New York to Buffalo, and the railroad of the former Lake Shore & Michigan Southern Railway Company extends from Buffalo to Chicago. Both of these companies were domestic railroad corporations, and their respective lines of railroad formed "a continuous or connected line of railroad with each other." Railroad Law, § 140. The uniting of these two roads was that of two connecting lines, which were in no respect parallel or competing. This has been the unanimous view of the various commissions of the states (including the state of New York) through which the consolidated railroad runs, who had jurisdiction of the question. These state public utility commissions are presumed to be composed of men who from experience and training are thought to be peculiarly qualified to deal with questions of this nature, and their investigation is made with a view to public interests which may be promoted or prejudiced by a consolidation of this character. No evidence has been produced on the trial of this action which would justify the court in disregarding or overruling the conclusions reached by the several commissions that have passed on the question.

[2] It appears that, as successor of the railroad companies entering into the consolidation agreement, the new company has become vested with the stock ownership in amounts exceeding 50 per cent. of the capital stock outstanding of various other railroad companies whose railroads, or some of them, it is contended by the plaintiff, are parallel and competing, or potentially competing, with the railroad of the consolidated company. The evidence shows that the railroads of the companies thus controlled by stock ownership, generally speaking, serve territory quite distinct from that served by the railroad of the consolidated company. The Michigan Central Railroad Company, for example, extending farthest north, serves the lower peninsula of Michigan. The railroads of the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company (commonly known as the Big Four), extend-

ing farthest south, constitute an extensive system of lines generally serving Western and Southwestern Ohio and Southern Indiana and Illinois. The railroad of the consolidated company, formerly of the Lake Shore & Michigan Southern Railway Company, runs between the Michigan Central and the Big Four systems.

The system of railroads of the Lake Erie & Western Railroad Company and the westerly portion of the railroads of the New York, Chicago & St. Louis Railroad Company (commonly known as the Nickel Plate) lie intermediate of the lines of the consolidated company and of the Big Four. These various systems of railroads, by their branch lines, to some extent intersect the same territory, and incidentally some portions of them, as shown upon the maps in evidence, would appear to be parallel. This result, however, is incidental to the uniting of distinct systems of railroads serving separate territories under one control rather than significant of any intent to acquire what are claimed to be parallel and competing lines, merely because they are parallel and competing, or to monopolize the transportation business in any part of the extensive territories served by the so-called "New York Central Lines." The ownership of a majority, or even of substantially the whole, of the outstanding stock of a railroad company, is not, in a legal sense, the ownership of the railroad itself. Pullman Car Co. v. Missouri Pacific, 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499; Humphreys v. McKissock, 140 U. S. 304, 11 Sup. Ct. 779, 35 L. Ed. 473. In the Humphreys Case, Mr. Justice Field, delivering the opinion of the court (140 U. S. at page 312, 11 Sup. Ct. 781 [35 L. Ed. 473]), said:

"Both the commissioner, and the court, in confirming his report and entering the decree mentioned, seem to have confounded the ownership of stock in a corporation with ownership of its property. But nothing is more distinct than the two rights; the ownership of one confers no ownership of the other. The property of a corporation is not subject to the control of individual members, whether acting separately or jointly. They can neither incumber nor transfer that property, nor authorize others to do so. The corporation—the artificial being created—holds the property, and alone can mortgage or transfer it; and the corporation acts only through its officers, subject to the conditions prescribed by law."

The consolidation attacked by the plaintiff does not involve the consolidation of directly owned parallel and competing lines of railroad. The consolidation of these connecting railroads did not, of itself, affect the previously existing status with reference to the stock control of the various other railroad companies. De Koven v. Lake Shore & Michigan Southern Railway Co. (D. C.) 216 Fed. 955.

[3] The plaintiff cites the statutes of several of the states through which the consolidated railroad runs, other than the state of New York, forbidding the consolidation of parallel and competing lines, and also various anti-monopoly statutes of such states. It seems enough to say that these statutes are, for the most part, penal in character, so that, under the well-settled rule, the courts of this state should make no attempt to execute them. Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123. Were the court not prevented by this rule from attempting to execute the penal statutes of other

states, no evidence is presented which would warrant the court in taking such action. If, as a matter of fact, the defendants have transgressed any of the statutes of other states, the plaintiff's appropriate course, if entitled to any relief, would be to apply in the courts of the states whose laws are claimed to be violated.

It is proper to notice, in this connection, that the stock control of alleged parallel and competing lines now vested in the consolidated company merely continues a like control which was either vested in the companies parties to the consolidation agreement or in individuals, and has been continuously exercised for a great many years, and, so far as appears from the evidence, without objection or challenge by either public authorities or private parties until at or about the time of the institution of this action. If there had been a violation of the statutes cited by the plaintiff, or if an actual detriment to the public had resulted from the acts of the defendants complained of, it is reasonable to infer that proper action would long since have been taken by the authorities charged with the duty of enforcing the laws. After so long a period of acquiescence, rights may have accrued to defendants which could not now be disturbed by any action which might be brought by the public authorities or by private parties in the courts of the other states mentioned. In so doubtful a situation, this court ought not to assume jurisdiction of these alleged violations.

[4] The plaintiff also complains of the leasing of the New York & Harlem Railroad in 1873, and of the West Shore Railroad in 1885, to the New York Central & Hudson River Railroad Company, one of the parties to the consolidation agreement. It appears that these leases are respectively for such long terms as to amount, for all practical purposes, to a fee; that the lessee company has been in undisturbed possession of the demised railroads since the date of the respective leases, and has expended very large sums of money in their improvement and development, particularly with reference to providing terminals for the passenger and freight traffic originating and terminating in the city of New York. There is no statutory prohibition in terms against the leasing of parallel and competing railroad lines in this state, but all leases of railroad properties are now required to be approved by the Public Service Commission. The leases in question long antedated the creation of any such body or the imposition of any such requirement by the Legislature. Nor can it be said that the leases in question violated any of the anti-monopoly statutes of this state, in view of the holding of the court in Matter of Interborough-Metropolitan Co., 125 App. Div. 804, 110 N. Y. Supp. 186. The undisturbed possession under lease of these railroad properties by the lessee company, in one case for 41 years and in the other for 28 years prior to the commencement of this action, has ripened into a right which, under our statutes of limitation, may not now be challenged by the plaintiff.

[5] The ownership of a majority of the capital stock of the New York State Railways, a domestic railroad corporation, owning and operating certain systems of trolley lines in the central portions of the state, by the New York Central Railroad Company, was shown to have

been duly approved by the Public Service Commission, and I think is therefore unassailable.

The plaintiff also attacks the organization of the New York State Realty & Terminal Company, a business corporation, the entire capital stock of which is owned by the consolidated company as successor of the New York Central & Hudson River Railroad Company. Its right and that of its predecessor to hold such stock is conferred by section 52 of the Stock Corporation Law (Consol Laws, c. 59) upon conditions which section 11 of the consolidation agreement satisfies. The railroad company itself is not engaged, so far as the evidence shows, in the conduct of any business foreign to the purposes for which it was incorporated. The organization of the Realty Company, for the purpose mainly of buying, selling, holding, and operating real estate, seems to have been approved by the board of directors of the New York Central & Hudson River Railroad Company, and the acquisition of its capital stock by the railroad company authorized, but the organization itself is' shown to have been regular. The case of Schwab v. Potter Company, 194 N. Y. 409, 87 N. E. 670, was decided on its own peculiar facts, which are so different from the facts shown in the case at bar as to make it inapplicable.

The plaintiff invokes the federal statute known as the Sherman Act, and claims the right, under that statute and the subsequently enacted Clayton Act, to compel, by the injunctive powers of the court, what would be substantially a dissolution and disintegration of the extensive system of railroads comprising the New York Central Lines. The plaintiff has proven no damage to himself as a stockholder, or to the companies in which he is a stockholder, resulting from the present control through lease or stock ownership of the various railroads now parts of the system. A recent decision by the federal court has denied the right of a minority stockholder, thus failing to prove special damage, to secure any relief under the Sherman Act. Union Pacific Railroad Co. v. Frank, 226 Fed. 906, —— C. C. A. ——. It would appear that a considerable number of trunk lines, under separate ownership and management and actively competing for business, connect Chicago and points on the Mississippi river with the Atlantic seaboard. The territory traversed by the railroads comprising the New York Central Lines would appear, from an inspection of the map, to be served by a fine network of railroads belonging to the different competing systems, so that it may be fairly said that at nearly all points of any importance a shipper or passenger has a choice of two or more competing routes. Certainly no evidence was produced tending to show that there is any actual restraint of competition, or that shippers and receivers of freight, and passengers, have poorer transportation facilities afforded them by reason of the uniting under one control of the railroads comprising the New York Central Lines. The evidence, on the other hand, tends to show that, by reason of such united control, better transportation and terminal facilities are afforded the localities reached by the New York Central Lines than would be the case if the system were disintegrated and certain of its railroads independently operated.

[6] It is not the province of a state court, at the suit of a private individual, to employ the injunctive powers of the court to prevent any alleged violation of the federal act of 1890 (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1913, §§ 8820–8830]). Whether the uniting of two railroad properties under one control is or is not a violation of the act involves a very broad inquiry and examination of many facts, including an estimate of the result to the public, whether for benefit or the reverse, of dissolving such united control. The localities affected ought to have their day in court on so important a question. I think it may be fairly gathered from the decisions of the federal Supreme Court that an inquiry of this kind ought always to be conducted in a federal court and by or under the direction of the Attorney General of the United States. This seems to be the view of the Supreme Court as recently announced in Wilder Mfg. Co. v. Corn Products Co., 236 U. S. 165, 35 Sup. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118. Although the private litigant in that action was not a minority stockholder, the reasons advanced by the court for denying his plea would seem on principle to be equally applicable to the suit of a minority stockholder.

[7] Assuming that it is incumbent upon this court to enter into an inquiry in this action as to whether the Sherman Act had been violated in any of the respects claimed by the plaintiff, I feel constrained to hold that no evidence has been produced on the trial which would warrant any action by this court. There is an entire absence of evidence to show that the common control exercised over the New York Central Lines has been detrimental to the public, or has resulted in any unreasonable restraint of trade, or tended in any appreciable degree toward the establishment of a monopoly of transportation. Upon the facts presented, my conclusion is that the Sherman Act has not been violated, that the common control of the New York Central Lines has resulted in public benefit, and not detriment, and that the effect of an injunction which would compel the disintegration of the system and the independent operation of certain lines would be a distinct public injury.

The complaint herein should be dismissed, upon the merits, with costs. The findings submitted by the parties have been passed upon. The defendants' counsel may submit a form of decision embodying the findings of fact and conclusions found at the request of the defendants for signature. Proposed findings of fact and conclusions of law submitted by the plaintiff, as passed upon by the court, may be annexed to the judgment roll.