**MARK TWAIN CAPE GIRARDEAU BANK, Plaintiff-Appellant,**

**and**

**William Kostman, Commissioner of Division of Finance, State of Missouri, Defendant-Appellant,**

**v.**

**STATE BANKING BOARD of Missouri, Defendants-Respondents,**

**and**

**Cape State Bank and Trust Co. and First National Bank of St. Charles, Missouri, et al., Intervenors-Respondents.**

No. 35928.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 17, 1975.

Motion for Rehearing or Transfer
Denied Sept. 8, 1975.

Application to Transfer Denied
Nov. 10, 1975.

Hal E. Hunter, Jr., New Madrid, Hearnes, Padberg, Raack, McSweeney & Slater, St. Louis, for plaintiff.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, Niedner, Moerschel, Nack & Ahlheim, St. Charles, Carson, Inglish, Monaco & Coil, Cullen Coil, Hendren & Andrae, Jefferson City, Oliver, Oliver & Jones, Cape Girardeau, McFadin & White, North Kansas City, Mueller & Statler, Jackson, for defendants.

CLEMENS, Presiding Judge.

Plaintiff Mark Twain Cape Girardeau Bank (the proposed bank) appeals from defendant State Banking Board's (the Board) denial of its application for a bank charter.

The proposed bank's incorporators are seven individuals and Mark Twain Bancshares (Bancshares), a holding company subscribing to 90 per cent of the proposed bank's stock. The Commissioner of Finance conducted an *ex parte* investigation and issued the charter. Thereafter, existing banks in Cape Girardeau, and others, appealed to the Board. Testimony during the Board's extensive hearings primarily concerned Cape Girardeau's commercial life, services rendered by existing financial institutions, and probable economic effects of another bank.

The Board made these findings of fact based on substantial evidence:

a. Cape Girardeau, population 31,282, and the immediate surrounding area are expected to maintain a slow, steady growth.

b. Cape Girardeau presently has three commercial banks, each with nearby "facilities" either in operation or authorized: The Farmers and Merchants Bank; the First National Bank, affiliated with the First Union Group of St. Louis; and Cape State Bank and Trust Company, in the process of affiliating with Mercantile Bancshares Corporation of St. Louis.

c. Cape Girardeau presently has three savings and loan associations, thirteen finance companies and two credit unions.

d. The above-mentioned financial institutions compete vigorously with each other.

e. The existing banks and financial institutions adequately provide for the convenience and needs of the community served by them.

f. A new bank in Cape Girardeau would impede the established banks' expansion plans, slow their growth and hinder their ability to compete.

g. It is not clear that a new bank in Cape Girardeau would be financially successful.

h. The Bancshares holding company was formed for the purpose of acquiring ownership and control of banks in Missouri; its present purpose is to organize banks it would own and control.

i. Bancshares was the primary organizer and applicant for the Proposed Bank's charter, and Bancshare's activity is an attempt by a holding company to organize a bank, as distinguished from an acquisition of or an affiliation with an existing bank.

j. Bancshares is the principal and primary party applicant in that it owns over 90 per cent of the stock in the proposed bank.

Based upon the above findings of fact the Board reached several conclusions of law: 1. The proposed bank did not sustain its burden of proving that the convenience and needs of the Cape Girardeau community presently warranted the opening of a new bank in Cape Girardeau. 2. Granting the proposed charter would violate Chapter 362, V.A.M.S., statutory prohibitions against branch banking. 3. Mark Twain Bancshares, Inc., was not and is not a "person" who may apply for a bank charter within the meaning of the applicable Missouri statutes contained in Chapter 362, V.A.M.S.

Based upon its findings and conclusions, the Board revoked the Commissioner's order, and the proposed bank petitioned for review in the circuit court. The circuit court adopted the Board's findings and conclusions and entered judgment against the proposed bank. It now appeals, contending the circuit court erred in ruling that (a) the needs and convenience of the Cape Girardeau community do not require a new bank; (b) granting the charter would violate statutory prohibitions against branch banking; and (c) Bancshares is not a "person" who by statute may apply for a bank charter.

We have considered each contention of error. We find the circuit court's judgment on the third contention correct, and we therefore affirm the judgment denying the proposed bank's charter.

■ The proposed bank correctly notes that RSMo, § 362.015 requires that a bank be incorporated by "five or more persons." It argues that even if we interpret "persons" to mean "natural persons," the statutory requirement was fulfilled by the presence of seven "natural persons" who were also incorporators. We disagree. Bancshares was the "real" applicant for the charter. It was to hold 18,150 of the 20,000 shares of the proposed bank. A Bancshares officer signed the proposed bank's application on behalf of Bancshares and as "attorney-in-fact" for the seven individual incorporators. Bancshares alone paid all incorporation fees. All correspondence with the Commissioner of Finance concerning the charter application issued from or was directed to Bancshares, without reference to individual incorporators of the proposed bank. The real and primary applicant for the charter was Bancshares; if it is not a qualified incorporator, the seven individuals' ten per cent contribution of capital was plainly inadequate for incorporation.

■ The critical question, therefore, is whether Bancshares is a qualified incorporator of a banking corporation, i. e., a "person," under § 362.015. We hold it is not. Bancshares is a general business corporation and may not incorporate another *general* business corporation, since § 351.050 requires such incorporators to be "natural persons." Chapter 362, which specifically covers banking corporations, states merely that banks may be incorporated by "five or more persons." § 362.015, RSMo. Thus, Chapter 351 explicitly precludes a corporation from being an incorporator, and Chapter 362 does not specifically authorize it.

Two sections of the banking statutes are pertinent. § 362.015 reads: "2. When authorized by the finance commissioner as provided in Section 362.035 any five or more persons who shall have associated themselves by articles of agreement, in

writing, as provided by law, for the purpose of establishing a bank or trust company *may be* incorporated under any name or title designating such business." (Our emphasis).

Also pertinent is § 362.030, which declares the Commissioner of Finance ". . . shall cause an examination to be made to ascertain . . . whether the character, responsibility and general fitness of the persons named in the articles of agreement are such as to command confidence and warrant belief that the business of the proposed corporation will be conducted honestly and efficiently . . ."

Neither of these sections specifically empowers a general business corporation to incorporate a bank. And the context of neither section supports a clear inference of that power. Bancshares asserts it has such power by virtue of the statutory definition of "person" in § 1.020, RSMo: "As used in the statutory laws of this state, unless otherwise specially provided or unless plainly repugnant to the intent of the legislature or to the context thereof: . . .

"(7) The word 'person' *may* extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations." (Our emphasis).[1]

■ We note that § 362.015 provides that five or more persons *may* be incorporated as a bank, and that under § 1.020(7) the word "person" *may* be applied to a corporation. We read the word "may" as permissive in both contexts. *Bloom v. The Missouri Board for Architects, Professional Engineers and Land Surveyors*, 474 S.W.2d 861[1] (Mo.App.1971). Neither section 362.015 nor 1.020(7) mandates the conclusion that the word "person" includes a corporation. Indeed, were our interpretation based solely upon the contexts of sections 362.015

and 362.030, we would conclude that "persons" must mean "natural persons," since the legislature requires the Commissioner to examine "character, responsibility and general fitness" in order to determine whether the "persons" applying will "command confidence" as bankers.

■ When the "character" of "persons" is to be ascertained, clearly the character of individuals is implied. A corporation is an artificial entity. Had the legislature intended to include corporations among "persons" whose "character" was to be examined we believe the statute would have so specified. Construction of the word "person" to include "corporation" is not required, but rather "depends upon the context and the intent with which the term is employed." *State ex rel. Burnes National Bank of St. Joseph v. Duncan*, 302 Mo. 130, 257 S.W. 784[1] (Mo. banc 1924), reversed on other grounds, 265 U.S. 17, 44 S.Ct. 427, 68 L.Ed. 881 (1924). A corporation "without a brain or body, existing only on paper through legislative command, and incapable of thought or action" does not inherently possess a good, bad, moral, or immoral "character," and the Commissioner cannot determine "fitness" of a "person" to be a banker when the "person" exists "only on paper." See *Schwab v. E. G. Potter Co.*, 194 N.Y. 409, 87 N.E. 670, 672 (1909). Common sense compels our conclusion that in the context of Chapter 362 concerning banking corporations the legislature intended the word "person" to mean "natural persons."

The wording in other sections of Chapter 362 (with our emphasis added) indicates the legislature did not think of "persons" as "corporations." Section 362.415(1), (4), and (5) are on point. Subsection 1 states, "No persons . . . shall subscribe to . . . or be in any way interested in any associa-

---

1. We note that all the definitions in § 1.020 are phrased mandatorily with the exception of (7), the definition of "person." All other definitions state that the defined word "is" or "means" or "includes" certain terms, whereas the definition of "person" states that it "*may* extend and be applied to bodies politic and corporate . . . ." (Our emphasis).

tion, institution *or* company formed or to be formed for the purpose of issuing notes . . . ." The implication is that "person" is distinct from organizations. Subsection 4 states, "No person, association of persons *or* corporation . . . shall keep any office . . . ." The implication is that "person" is not a "corporation." Subsection 5 states, "Every person, *and* every corporation, director, agent, officer or member thereof, who shall violate . . . ." Again, the phrasing implies that "person" excludes "corporation."

When the legislature *has* used "person" in a sense broader than "natural person" it has been explicit in its definitions. See sections 196.311(8), 197.020(3), 266.291(1), and 400.1–201(30).

There is no indication from the wording of Chapter 362 that the legislature intended "persons" in section 362.015 or 362.030 to include "corporations." There is, however, some indication from the context of these two sections and from the other sections of Chapter 362 that the legislature intended for "persons" who incorporate banks to be "natural" persons only.

■ But we need not construe the word "person" solely from the context of those sections. We also look to the legislative intent so that we may give the word its plain and ordinary meaning and thereby promote the object of the statute. *State v. Brady*, 472 S.W.2d 356[1] (Mo.1971), *Wigand v. Dept. of Public Health and Welfare*, 454 S.W.2d 951[10] (Mo.App.1970). The legislative intent in referring to "persons" in the banking statute is unclear. We cannot therefore assume the legislature intended the term to include other than "natural" persons. As Fletcher has stated in 1 Corporations, § 85, pp. 382–5: "Statutes providing for the formation of corporations are not to be construed as authorizing other corporations to become corporators, unless such an intention on the part of the legislature is clear, especially statutes, authorizing 'persons' to form corporations, wherein cannot be implied or discerned any intendment that other than natural 'persons' is meant. There is the further obstacle that in the absence of express statutory authority or charter power, a corporation cannot become a subscriber to the capital stock of a proposed corporation,[2] and it is said that it cannot do so indirectly. Referring only to the latter power, it seems clear that where a statute provides that a certain number of 'persons' may by articles of association form a corporation, such a statute refers only to natural persons, and not to corporations."

■ While the legislative intent of Chapter 362's definition of "person" is not clear, the intent in Chapter 351, the general corporations' statute, is clear. In Chapter 351, the legislature explicitly defines "persons" as "natural persons" and states that only "natural persons" may be incorporators. When one statute deals generally with a subject, (incorporating a general corporation) and another deals with part of that same subject in a more minute and definite way, (incorporating a banking corporation) the two should be harmonized unless the specific statute contains provisions clearly contrary to the general statute. *Laughlin v. Forgrave*, 432 S.W.2d 308[1] (Mo. banc 1968). We find that the incorporation provisions of the general corporations' statute in no way contradicts the incorporation provisions of the specific banking statute, and we therefore read the two statutes together in order to achieve consistency of legislative intent. The achievement of such consistency requires reading "person" to mean "natural person" in Chapter 362, just as in Chapter 361.

*Fletcher* supports this reasoning by citing language of New York's highest court in

---

**2.** Section 351.385(6) RSMo, authorizes corporations to subscribe to shares of stock in *existing* corporations.

*Schwab v. E. G. Potter Co., supra :* "Corporations are created by statute and have no powers except those conferred by statute, directly or indirectly. . . . There is no statute in this state which directly authorizes one corporation to organize another, and . . . such action is not indirectly authorized by any reasonable inference from the most extensive powers committed to any class of corporations known to our law. Corporations are organized by natural persons, acting under the direction of a statute, and they only can become corporators, directors, or officers. 'Artificial persons', without brain or body, existing only on paper through legislative command, and incapable of thought or action except through natural persons, cannot create other 'artificial persons', and those, others still, until the line is so extended and the capital stock so duplicated and reduplicated, as to result in confusion and fraud."

We have ruled that subscription to only ten per cent of the proposed bank's capital by seven individual subscribers was inadequate to incorporate, and that Bancshares was not a "person" qualified under Chapter 362 as an incorporator. We therefore hold that the circuit court properly affirmed the Board's denial of the proposed bank's application to incorporate. We do not reach the issues of "convenience and necessity" or that of "branch banking."

Judgment affirmed.

KELLY and STEWART, JJ., concur.