575 F.2d 1248
 11 ERC 2068
 PLAZA BANK OF WEST PORT, ST. LOUIS, MISSOURI, Petitioner,
v.
BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,
and
Manchester Financial Corporation, St. Louis, and Manchester
Bank West County, Maryland Heights, Missouri,
Respondents-Intervenors.
 No. 77-1730.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1978.
Decided May 15, 1978.
 
 Jerome Wallach, Wallach & McAvoy, Gravois, Fenton, Mo., for petitioner.
 Thomas G. Wilson, Atty. App. Section, Civ. Div., Dept. of Justice, Washington, D. C., for respondent, Board of Governors, etc.; Barbara Allen Babcock, Asst. Atty. Gen., and Ronald R. Glancz and Mark N. Mutterperl, Attys., Washington, D. C., on brief.
 Thompson & Mitchell, St. Louis, Mo., for intervenor-respondent, Manchester Financial Corp., et al.; Peter A. Fanchi (argued), and David F. Ulmer, St. Louis, Mo., on brief.
 Before VAN OOSTERHOUT, Senior Circuit Judge, LAY, Circuit Judge, and HANSON, Senior District Judge.*
 VAN OOSTERHOUT, Senior Circuit Judge.
 
 
 1
 Before us is a timely petition filed by Plaza Bank of West Port, St. Louis, Missouri (Plaza Bank), for review of the order of the Board of Governors of the Federal Reserve System (hereinafter the Board), effective August 15, 1977, granting the application of Manchester Financial Corporation (MFC) to obtain prior approval of the transfer of 99.4% of the capital stock of Manchester Bank West County, Maryland Heights, Missouri (Manchester Bank West), pursuant to 12 U.S.C. § 1842, and for review of the order of the Board effective December 7, 1977, denying Plaza Bank's request for reconsideration or a stay order. The Board's order granted MFC's application for prior approval of the acquisition of the shares of stock of Manchester Bank West. The approval was granted pursuant to 12 U.S.C. §§ 1841 et seq. Jurisdiction to review the Board's orders is conferred upon this court by 12 U.S.C. § 1848. MFC and Manchester Bank West have intervened and filed briefs in support of the Board's orders. The Board has likewise filed a brief in support of its orders.
 
 
 2
 Plaza Bank asserts that the Board's order approving the stock acquisition should be vacated and set aside for the following reasons:
 
 
 3
 I. The Board's order is arbitrary, capricious and an abuse of discretion in that the Board did not discharge its duty to consider its obligations under 12 U.S.C. § 1842(c) and all relevant factors in making its determination.
 
 
 4
 II. The Board failed to comply with the National Environmental Policy Act.
 
 
 5
 III. The Board acted illegally and beyond its jurisdiction in approving the acquisition of the stock of the bank which Plaza Bank claimed to have been chartered in violation of applicable Missouri law.
 
 
 6
 We reject each of such contentions and dismiss the petition for the reasons hereinafter stated. The record is voluminous. We will only briefly summarize the relevant facts to the extent necessary to afford a background for discussion of the legal issues.
 
 
 7
 Five individuals applied to the Missouri Commissioner of Finance for a state charter for Manchester Bank West pursuant to Missouri law. The applicants were provided with a loan for the required capital by MFC. Submitted with the state application and also with the federal acquisition application was the written contract between the five organizers and MFC which provided that the loan would be without interest and that upon the granting of the state charter the stock would be transferred to MFC and the $1,200,000 loan would be cancelled. The state charter was granted subject to certain conditions, the material one here being:
 
 
 8
 Finally, the correspondence which accompanied the charter expressly stated that Manchester Bank West County was not to open unless and until prior approval was granted by the Board of Governors of the Federal Reserve System for acquisition of said bank by Manchester Financial Corporation, St. Louis, Missouri.
 
 
 9
 On October 25, 1976, MFC applied to the Board for prior approval to acquire 99.4% of the voting shares of Manchester Bank West. The 91-page application included a detailed feasibility study. The Federal Reserve Bank of St. Louis made a field investigation and submitted a detailed report to the Board. Copies of the application were sent to the Missouri Commissioner of Finance, the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and the Antitrust Division of the Department of Justice. Notice of the application was published in the Federal Register. The Missouri Commissioner of Finance advised the Board by letter on December 1, 1976, that he had no objection to the application.
 
 
 10
 Plaza Bank filed detailed objections to the application and was afforded a full opportunity to present its reasons why the application should not be granted. Additional facts will be set out in the course of the opinion.
 
 
 11
 The scope of review of this proceeding is set out in 5 U.S.C. § 706 which provides that a court shall hold unlawful and set aside administrative action, findings and conclusions which are found to be arbitrary, capricious, an abuse of discretion or not otherwise in accordance with law. In First National Bank of Fayetteville v. Smith, 508 F.2d 1371, 1376 (8th Cir. 1974), this court held:
 
 
 12
 The "arbitrary and capricious" standard of review is a narrow one. Citizens to Preserve Overton Park, Inc. v. Volpe, supra, 401 U.S. 402 at 416, 91 S.Ct. 814, 28 L.Ed.2d 136. Its scope is more restrictive than the "substantial evidence" test which is applied when reviewing formal findings made on a hearing record. See Camp v. Pitts, supra, 411 U.S. 138 at 141, 93 S.Ct. 1241, 36 L.Ed.2d 106; Webster Groves Trust Co. v. Saxon, supra, 370 F.2d 381 at 387 (8 Cir.); Charlton v. United States, 412 F.2d 390, 398 (3d Cir. 1969) (Stahl, Circuit Judge, concurring). "Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis." Carlisle Paper Box Co. v. N.L.R.B., 398 F.2d 1, 6 (3d Cir. 1968). Something more than mere error is necessary to meet the test. N.L.R.B. v. Parkhurst Manufacturing Co., 317 F.2d 513, 518 (8th Cir. 1963). To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case * * * ." 73 C.J.S. Public Administrative Bodies and Procedure § 209 at 569 (1951).
 
 
 13
 The Bank Holding Company Act, 12 U.S.C. § 1848, states: "The findings of the Board as to the facts, if supported by substantial evidence, shall be conclusive."
 
 
 14
 We now reach the errors relied upon and will treat them in the order hereinabove stated.
 
 I.
 
 15
 The factors governing the approval of a stock acquisition application are set out in 12 U.S.C. § 1842(c). Petitioner's brief on point I consists of one and one-half pages. The Board in its brief sets forth in considerable detail the evidence supporting the approval of the application. We have examined the record and find that the evidence supporting the economic and public interest aspects of the application is overwhelming. In the absence of any substantial attack upon the economic issues, we see no purpose in detailing the supporting evidence. The Board's findings upon which the application was approved are supported by substantial evidence and are not arbitrary or capricious. Petitioner in brief on the first issue states that it presented two independent arguments: (1) the interpretation of R.S.Mo. 362.015 and 351.050, and (2) the interpretation of R.S.Mo. 362.415, and that only the first point was considered by the Board. We shall consider this issue at point III.
 
 II.
 
 16
 The National Environmental Policy Act, at 42 U.S.C. § 4332(2)(C), provides all agencies of the federal government shall include with respect to major federal actions significantly affecting the quality of the environment a detailed environmental impact statement. Petitioner, relying largely on Country Club Bank of Kansas City v. Smith, 399 F.Supp. 1097 (W.D.Mo.1975), urges that the Board erred in not building up an environmental record and in not stating its reasons for not requiring an environmental impact statement. Country Club is distinguishable from our present case in that there a federal bank charter was involved. Moreover, the issue of whether an environmental impact statement was required was not adjudicated but such issue was remanded to the Comptroller of the Currency for more detailed findings. In our present case the Board in its order denying reconsideration states:
 
 
 17
 The second argument advanced by Petitioner, that an EIS statement is required to be filed by the Board, is based upon section 102(2)(c) of the National Environmental Policy Act (42 U.S.C. § 4332(2)(c)) ("NEPA") which provides that an EIS must be prepared by any federal agency taking " . . . major Federal action significantly affecting the quality of the human environment. . . . " The "Federal action" taken by the Board on August 15, 1977, was its approval of a transfer of shares of Bank from five individual incorporators of Bank to MFC. The Board finds that such a transfer, alone, would not significantly affect the quality of the human environment. Moreover, the Petitioner has not indicated how it believes the Board's action would affect the environment. Thus, having reviewed the question in the context of Protestant's request, the Board finds that it is not required to file an EIS in connection with the acquisition of Bank by MFC.
 
 
 18
 The Board in a footnote states that in its twenty years of administration of the Act no one has raised the question that a transfer of shares of a bank affects the environment. While this is not conclusive on the issue, and while it is perhaps relevant only as to years subsequent to 1969, when NEPA was enacted, it lends some support to the Board's position. The state-chartered bank is located in a new shopping center. The record discloses no evidence that the bank will adversely affect the environment or that the acquisition of the stock thereof by MFC will adversely affect the environment. We hold that the Board committed no error or abuse of discretion in determining that an EIS was not essential.
 
 III.
 
 19
 Petitioner places its greatest reliance upon its contention that the state bank charter was issued in violation of state law. R.S.Mo. 362.015 and R.S.Mo. 351.050, as interpreted by Mark Twain Cape Girardeau Bank v. State Banking Board, 528 S.W.2d 443 (Mo.App.1975), provide that applications for state bank charters can be made only by individuals and not by corporations. The case holds that a corporation is not a person within the meaning of the statutes. In Mark Twain seven individual subscribers joined with the corporation in the application. The court held no charter could be granted because of the corporation's participation as an applicant. In its findings, the court among other things stated:
 
 
 20
 Bancshares was the primary organizer and applicant for the Proposed Bank's charter, and Bancshare's activity is an attempt by a holding company to organize a bank, as distinguished from an acquisition of or an affiliation with an existing bank. (Emphasis added).
 
 
 21
 528 S.W.2d at 445. In our present case MFC was not the applicant for the charter. The five individual applicants met the statutory requirements for bank charter applicants.
 
 
 22
 The charter was granted subject to conditions heretofore mentioned which have now been met. Pursuant to the Board's authorization and the issuance of the state bank charter, the bank stock was transferred to MFC. The bank opened for business on December 2, 1977. In its order denying rehearing the Board states:
 
 
 23
 The Petitioner argues that the chartering of Bank was invalid under § 362.415 of the Missouri Statutes and that, pursuant to the Supreme Court's holding in Whitney National Bank of Jefferson Parish v. Bank of New Orleans and Trust Company ("Whitney"), the Board is required to consider issues of State law such as that presented by the acquisition of Bank by MFC.
 
 
 24
 Although the Board did not specifically address the issue of the alleged violation of § 362.415 of the Missouri Statutes in its Order, it did address the closely related issue of the alleged violation of § 362.015 of the Missouri Statutes. The Board found that under Whitney, the Board was not required to consider a violation that occurred, if at all, upon the issuance of the charter for Bank by the Missouri Commissioner of Finance. Only where the acquisition of a bank by a bank holding company would result in a violation of State law is the Board required to consider issues of State law. However, the alleged violation of § 362.415, like the alleged violation of § 362.015 previously considered by the Board, occurred, if at all, upon the issuance of the charter for Bank by the Missouri Finance Commissioner. Approval of the application by the Board constituted an approval of Applicant's acquisition of shares of Bank, not approval of the chartering of Bank.
 
 
 25
 The Board, for reasons set out in its order, committed no error in denying a stay of its order approving the acquisition of the stock by MFC.
 
 
 26
 The Board in its original order held:Pursuant to the Supreme Court's holding in Whitney National Bank of Jefferson Parish v. Bank of New Orleans and Trust Company, the Board may "not approve a holding company arrangement involving the organization and opening of a new bank if the opening of the bank, by reason of its ownership by a bank holding company, would be prohibited by a valid state law. The Whitney case involved a bank holding company acquisition of a new bank that, the plaintiff contended, would in actuality function as a branch bank in a State in which branch banking was prohibited by State law. Thus, it was asserted, Board approval of an application to acquire such a bank would have enabled the bank holding company to enter into a de facto branch banking arrangement that was prohibited by State law and, in effect, would have constituted Board approval of unlawful conduct. Since the holding in Whitney, the Board has resolved issues of State law where they directly pertain to the question of whether the acquisition of a bank by a bank holding company would result in a violation of State law. In the facts presented by the instant application, however, the violation, if any, of Missouri law occurred upon the issuance of the charter for Bank by the Missouri Commissioner of Finance. Approval of the instant application would constitute an approval of Applicant's acquisition of shares of Bank, not approval of the chartering of Bank. Thus, the Board, by approving the instant application, would not approve assertedly unlawful conduct.
 
 
 27
 The Board has never presumed to review the incorporation or chartering procedures defined by State statutes and administered by State banking officials. Instead, the Board merely requires evidence of the issuance of the necessary charter or its conditional or preliminary approval and solicits the comments of the appropriate banking authority. Here, Bank's charter has been granted by the Missouri Finance Commissioner and, absent a judicial determination to the contrary, the Board presumes that the charter was granted lawfully. Since the effectiveness of the chartering action has not been stayed, the pending litigation in the Missouri State courts does not act as a bar to the Board's action on this application.
 
 
 28
 Our present case is distinguishable from Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). We find nothing in Whitney which would require the Board to pass on the validity of the state-issued bank charter. Such holding is inconsistent with 12 U.S.C. § 1846 which reads:
 
 
 29
 The enactment by the Congress of this chapter shall not be construed as preventing any State from exercising such powers and jurisdiction which it now has or may hereafter have with respect to banks, bank holding companies, and subsidiaries thereof.
 
 
 30
 We agree with the Board's view that it has no authority or duty to pass on the validity of the state charter under the facts of this case.
 
 
 31
 We are advised that various state proceedings are pending attacking the validity of the state charter. If petitioner is successful in obtaining a valid state judgment invalidating the charter as violative of state law, the approval of the transfer of the stock would be meaningless and serve no purpose. The bank would be unable to function without the state charter. The Board properly determined that the validity of the state bank charter should be determined by Missouri courts.
 
 
 32
 The petition for review is denied.
 
 
 
 *
 The Honorable William C. Hanson, Senior District Judge, Southern District of Iowa, sitting by designation