Headnotes 1 and 2: Reports, 34 Cyc. 1619 (1926 Anno).

# THE STATE ex rel. BURNES NATIONAL BANK OF ST. JOSEPH v. A. B. DUNCAN, Judge of Probate Court of Buchanan County.

### In Banc, January 4, 1924.

1. **ADMINISTRATION:** Corporations as Executor: Persons Named in Will. The word "persons" used in the Administration Act (Sec. 11, R. S. 1919), declaring that, after the probate of a will, letters testamentary shall be granted to the persons therein appointed executors, does not include a corporation. In some other statutes the word is made to include corporations as well as natural persons; but Section 11 must be read in connection with its context, and with other sections and articles of the chapter relating to Administration, and they demonstrate that only natural persons can be appointed executors, unless express statutory authority to administer estates is given to corporations, and such express authority is given only to trust companies.

State ex rel. Burnes Natl. Bank v. Duncan.

2. ———: National Bank as Executor: Federal Reserve Act: Right of State Court to Construe. The power to regulate the acquisition and transfer of property, descents and distributions, the devolution of estates, etc., is exclusively within the jurisdiction of the State; and notwithstanding the Federal Reserve Act authorizes national banks to act in the capacity of executors and to administer estates where such authority is "not in contravention of state or local laws," it is within the jurisdiction of the State courts to determine whether the authority thus conferred by Congress upon a national bank is in contravention of the state law; and notwithstanding the Federal Reserve Act authorizes the Federal Reserve Board to grant by special permit to national banks, when not in contravention of state laws, the right to act as trustees, executors, administrators, or in any other fiduciary capacity in which state banks, trust companies or other corporations which come into competition with national banks are permitted to so act under the laws of the State, and declares that "whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by state banks, trust companies or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of state or local laws," still the state courts have jurisdiction, and the right and duty, to determine whether a national bank, though appointed executor by a will, can act as executor of the estate under the laws of this State.

3. ———: ———: ———: Meaning of Act of Congress: Discrimination. The meaning of the Federal Reserve Act relating to the authority of a national bank to act as executor or administrator is that if state institutions of like character are denied the right to exercise such fiduciary functions national banks have no right to exercise them. It did not mean that national banks are to have privileges and advantages denied to state institutions, but the purpose was to place national banks upon equal terms with competing state banks. Unless the State has discriminated against national banks, they have no authority to act as executors.

4. ———: ——— ———: Contravention of State Law: Specific Statute: General Policy. In determining whether the exercise of fiduciary capacities by a national bank is in contravention of the state law, it is not necessary to point to a specific statute which forbids the exercise of such functions by such banks or similar institutions of the State; if the right of a bank or a similar institution to act as executor or administrator of an estate is contrary to the policy of the State and plainly so appears from its statutory enactments, then the exercise of such functions by either a national or a state bank is in contravention of the state law. In

Missouri the denial to banks of such functions is as clearly implied and as emphatic as it would be had there been an express statutory denial.

5. ——: ——: ——: **Trust Company: Not Competitor of Banks.** The Legislature has not given authority to state banks to act as executors, administrators, etc., but has selected trust companies as the only corporations to be invested with such trusts, and the authority is given to them only as a convenient incident to their ordinary business, and is hedged about with restrictions, conditions and securities which the state courts are powerless to impose, and which the Federal Reserve Act did not impose, upon national banks. The administration of estates by trust companies is committed to a department separate and independent of its banking business, and by taking on and engaging in this distinct and additional outside business the trust company does not make any easier or more effective its regular business, and is not competing with national banks in their regular business, and hence a national bank cannot act as executor because the exercise of such function would contravene the state law.

6. ——: ——: ——: **Contravention of State Law.** In the regulation of trust funds the Federal Reserve Act is in direct conflict with the Missouri statute, and since that act provides that national banks may act as executors of estates "when not in contravention of state or local laws" a national bank cannot act as executor, although appointed by the will.

*Mandamus.*

PEREMPTORY WRIT DENIED.

*John C. Landis* and *R. M. Duncan* for petitioner.

(1) National banks are authorized to exercise fiduciary powers where not in contravention of state law. Par. K, Sec. 9709, U. S. Comp. Stat. 1919 Supp., known as The Federal Reserve Act. (2) The act of Congress conferring fiduciary powers on national banks is constitutional. First Natl. Bank v. Fellows, 244 U. S. 416, 61 L. Ed. 1233. (3) Congressional action within its constitutional sphere is paramount, and state law or state policy must yield to it. McCulloch v. Maryland, 4 Wheat.

315; Osborn v. Bank, 9 Wheat. 728; Farmers' Bank v. Dearing, 91 U. S. 29; Davis v. Elmira Savings Bank, 161 U. S. 29; Easton v. Iowa, 188 U. S. 220; VanReed v. Peoples Bank, 198 U. S. 554; Second Employers' Liability Cases, 223 U. S. 1; No. Pac. Ry. Co. v. No. Dakota, 250 U. S. 135. (4) Trust Companies are authorized to exercise fiduciary powers under the laws of Missouri. Sec. 11801, par. 3, R. S. 1919. (5) Trust companies in Missouri are authorized to and actually do a banking business and are in competition with national banks. Denny v. Jefferson County, 272 Mo. 436; Chap. 108, R. S. 1919; Secs. 11799, 11810, R. S. 1919. (6) The exercising of fiduciary powers by national banks in Missouri is not in contravention of the laws of Missouri. Sec. 11801, R. S. 1919; Amendment Par. K, Sec. 9709, U. S. Comp. Stat. 1919 Supp.; Bank v. Fellows, 244 U. S. 416, 61 L. Ed. 1233; People v. Russell, 283 Ill. 520; In re Mollineaux, 179 N. Y. Supp. 90; Stanchfield Estate, 171 Wis. 552; Hamilton v. State, 94 Conn. 648. (7) Relator is entitled to relief sought. Sec. 11, Art. I, R. S. 1919; Amendment Par. K, Sec. 9709, U. S. Comp. Stat. 1919 Supp.; Bank v. Fellows, 244 U. S. 416, 61 L. Ed. 1233; People v. Russell, 283 Ill. 520; In re Mollineaux, 179 N. Y. Supp. 90; Stanchfield Estate, 171 Wis. 552; Hamilton v. State, 94 Conn. 648.

*Chas. H. Mayer* for respondent.

(1) Trust companies organized under the laws of Missouri are authorized to act as executors, administrators, etc. Sec. 11779, R. S. 1919. (2) The statutes of Missouri authorize no other corporation to act as an executor, administrator, etc. Secs. 7, 9, 11, R. S. 1919. (3) The original act of Congress authorized national banks to act as executors only when such action was not in contravention of state or local law. Par. K, Federal Reserve Act. (4) The amendment of September 26, 1918, made to the Federal Reserve Act, was a mere legislative construction which Congress placed upon its original act

for the guidance of Federal officers and was not intended to be and could not be a construction of state laws. Aquidneck National Bank of Newport v. Jennings, 117 Atl. (R. I.) 743. (5) The appointment of a national bank as an executor in Missouri would be in contravention of state law. Subdivisions 5, 8, 9, Sec. 11801, R. S. 1919; Secs. 11802, 11803, R. S. 1919; Sec. 11838, R. S. 1919, and Sections 6223, 6225, 6226, 6341, 6342, 6344, 6345 and 6346 therein made applicable; Aquidneck National Bank of Newport v. Jennings, 117 Atl. (R. I.) 743.

*Justin D. Bowersock, William T. Jones, Henry L. McCune, Armwell L. Cooper, I. P. Ryland* and *Samuel McReynolds, amici curiae.*

(1) An act of Congress, within a field covered by its constitutional power, fully appropriates that field and is made by the terms of the Constitution the supreme law of the land. McCulloch v. Maryland, 4 Wheat. 316; Northern Pac. Ry. Co. v. North Dakota, 250 U. S. 135; Smith v. Alabama, 124 U. S. 465; Mondou v. Ry. Co., 223 U. S. 1. (2) Congress has complete constitutional power to establish and regulate national banks. McCulloch v. Maryland, 4 Wheat. 316; Osborn v. Bank, 9 Wheat. 738; Davis v. Elmira Savings Bank, 161 U. S. 275; Farmers Bank v. Dearing, 91 U. S. 29; Easton v. Iowa, 188 U. S. 220; Van Reed v. Peoples National Bank, 198 U. S. 554. (3) The act of Congress granting trust powers to national banks is constitutional and cannot be nullified or controlled by state authority. First National Bank v. Fellows, 244 U. S. 416. (4) Such grant is not in contravention of the laws of Missouri. Farmers' & Traders' Bank v. Harrison, 57 Mo. 503, 513; Shockley v. Fisher, 75 Mo. 498, 501; In re Mollineaux, 179 N. Y. Supp. 90; Stanchfield's Estate, 171 Wis. 553, 178 N. W. 310; Hamilton v. State, 94 Conn. 648; Fidelity National Bank & Trust Co. v. Enright, 264 Fed. 236; Fellows v. First National Bank, 192 Mich. 640, 159 N. W. 335; Denny v. Jefferson County, 272 Mo. 436; Muth v. Trust Co.,

88 Mo. App. 596, 602.   (5) Apparently adverse decisions are. distinguishable.   People v. Brady, 271 Ill. 100; People v. Russell, 283 Ill. 520; Appeal of Woodbury, 78 N. H. 50; Aquidneck National Bank v. Jennings, 117 Atl. (R. I.) 743.

WHITE, J.—The relator filed its petition in this court setting forth its organization as a national bank and alleging that. one Mary E. Bird, a citizen of the State of Missouri and resident of the city of St. Joseph, died November 27, 1922, leaving a will which was duly admitted to probate in the Probate Court of Buchanan County, in which will she named the relator as executor; that the Federal Reserve Act, Section 9704, paragraph K, in granting certain powers to national banks, included the right to act as executors of estates; that the Federal Reserve Board, under the rules and regulations prescribed by the Federal Reserve Act, granted the petitioner the right to exercise its privileges so granted in so far as such exercise of that right was not in contravention of the state or local law; that under the Revised Statutes of Missouri for 1919, trust companies of this State are authorized to act as executors, and in fiduciary capacities; that subsequent to the probate of said will the petitioner made application to the Probate Court of Buchanan County for appointment as executor, and for the issuance of letters testamentary under the terms of the will; that January 29, 1923, the respondent, judge of said probate court, entered an order declining to appoint the petitioner on the grounds that under the laws of the State of Missouri said petitioner was not authorized to act as executor.   The proceedings of the probate court in that connection were set out in full, including the order declining to appoint the Burns National Bank as executor, and the appointment of Mary E. Williams, to be administratrix, with will annexed, of said estate.   The petition thereupon prays this court for an alternative writ of mandamus, directing the respondent judge of the probate court to set aside said

136    SUPREME COURT OF MISSOURI,

State ex rel. Burnes Natl. Bank v. Duncan.

order appointing Mary E. Williams, and to appoint the petitioner as executor of said estate, or show cause why he had not done so.

Upon the filing of such petition this court caused an alternative writ to be issued March 3, 1923.

The respondent then for return to the alternative writ demurred on the ground that the aforesaid petition did not state facts which would authorize the issuance of a peremptory writ of mandamus. The case, then, is to be determined upon the facts stated in the petition for an alternative writ.

I.    The petitioner calls attention to Section 11, Revised Statutes 1919, providing that after the probate of a will, letters testamentary shall be granted to the persons therein appointed executors, arguing that *"persons"* mentioned in the section includes corporations as well as natural persons. There can be

**Corporations as Persons.** no force in this argument unless petitioner means that this and other sections of the chapter relating to Administration, authorize any and every corporation to act as executor or in other fiduciary relation as provided for in that chapter. It is true that in many instances where the word "person" is used in a statute, it is construed to include corporations. The use of the term applies particularly to criminal statutes where a criminal act affects the property of a person. But that construction is by no means universal; it depends upon the context and the intent with which the term is employed. [30 Cyc. 1526; Words & Phrases, title "Person."] The entire purpose and context of Article 1 on Administration excludes the idea that "person" means corporation. Section 7, relating to persons who may administer on estates; Section 6, excluding certain persons from acting as administrator or executor; Section 36, providing the form of letters issued to an executor; in fact, all the provisions of that article show that the Legislature was dealing with and granting powers to natural persons.

It must be remembered that there was no common-law right to make a will or appoint an executor. It is purely a matter of statutory regulation. The statute authorizing certain persons to act as executor is an enabling statute, and it must be construed according to the intent and purpose of the Legislature in enacting it. The intent of the Legislature to include only natural persons in the authority granted in that article appears not only in the terms of the article, but is shown by the actual grant, in another statute, of authority to trust companies to act as executors, and in other fiduciary relations. There would have been no need of such affirmative act if this chapter on Adminstration had granted such authority to all corporations. Before any corporation in this State can have a right to act in a fiduciary relation in administering estates there must be express authority given that kind of a corporation and that statutory authority must be construed *in pari materia* with the chapter relating to Administration. Certainly there is no warrant for a contention that any corporation which might be named as executor in the will would have authority to act as such unless the law creating and defining the powers of such corporation should authorize it to perform such duties. The petitioner cannot derive authority to act as executor from the article on Administration or the section of that article relating to executors. It must be authorized to act through some other statute, Federal or State, giving it such authority.

II. The petitioner claims authority to act as executor under the provisions of the Federal Reserve Act. A brief filed herein by several *amici curiae,* presumably representing national banks, has a good deal to say about the authority of the Federal Government, **Federal Reserve Act: Supreme Authority.** quoting precedents to the effect that the Constitution of the United States and the acts of Congress, within the scope of authority delegated to them, are paramount—the supreme law of the land—and binding upon all the States; that when Congress has enacted a statute within its constitu-

tional power, regulating and defining the powers of any agency created by Congress, a State cannot by any enactment nullify or abridge the powers thus granted or defined. Of course those principles are well established, and the extent of such authority is not in issue in this case.

In accordance with its constitutional authority Congress, it was held, had power to authorize the organization of national banks and invest them with whatever functions it thought necessary to make the business of the banks successful. Thus incidental authority was founded upon necessity; national banks could be empowered to perform any duties when "Congress was of the opinion that these faculties were necessary to enable the bank to perform the services which are exacted from it, and for which it was created." [First National Bank v. Fellows, 244 U. S. 1. c. 420.] That quotation is taken from an earlier case and the principle applied to the section of the Federal Reserve Act authorizing banks to act in fiduciary capacities. That case is the only case cited, and, so far as we know, the only case decided by the United States Supreme Court construing that feature of the Federal Reserve Act under which the petitioner asserts its right. It is mentioned often in later decisions of other courts, and the argument of petitioner is largely based upon deductions drawn from it by such other courts. We think it settles a good many questions which have arisen in relation to the act—questions which occur in this case. It is well to note what is said there regarding the authority granted by Congress to a national bank to serve in fiduciary relations, such as executor, as necessary to enable the bank to perform the services required of it. We will notice below just what is meant by those duties in the light of the revision of the Federal Reserve Act.

III. While Congress has power, unless restrained by the Federal Constitution, to absorb to itself the entire regulation of such matters as are under consideration

here, it has not done so.  On the contrary, while the Federal Reserve Act authorizes National Banks to act in the capacity of executors, administrators, etc., Congress appeared to have in mind the popular protest against its supposed tendency to legislate in matters of purely local and state concern, for it limited the authority of national banks in that respect to cases where such authority was "not in contravention of the state or local law."  The question at issue here is whether the exercise of the fiduciary function by national banks authorized by that provision of the Federal Reserve Act is in contravention of the law of the State of Missouri.  First, however, we must ascertain what authority is to decide that question.  Is its determination peculiarly within the jurisdiction of the Federal Court?  Or does this court have authority to say whether the exercise of such functions by national banks is in contravention of the law of this State?

*Jurisdiction of State Courts.*

It has always been held that the power to regulate the acquisition and transfer of property, descents and distributions, the devolution of estates, etc., is exclusively within the jurisdiction of the State.  [Overly v. Gordon, 177 U. S. 214; Pennoyer v. Neff, 95 U. S. 714.]  Trustees, executors and administrators are the instruments through which the State regulates and controls certain classes of property.  This is recognized by the Federal courts in the cases just mentioned.  It naturally follows that the State, by statute, has the right to say, and the state courts have the right finally to determine what agencies may exercise such control without acting in contravention of the state law.  That was expressly held by the Federal Supreme Court in the Fellows Case, 244 U. S. l. c. 427-8, where Chief Justice WHITE said:

"In other words, we are of opinion that as the particular functions in question by the express terms of the act of Congress were given only 'when not in contravention of the State or local law,' *the state court was, if not expressly, at least impliedly, authorized by Congress to consider and pass upon the question whether the power*

*was or was not in contravention of the state law,* and we place our conclusion on that ground. The nature of the subject dealth with adds cogency to this view since that subject involves the action of state courts of probate in a universal sense, implying from its very nature the duty of such courts to pass upon the question and the power of the court below within the limits of state jurisdiction to settle, so far as the State was concerned, the question for all such courts by one suit, thus avoiding the confusion which might arise in the entire system of state probate proceedings and the very serious injury to many classes of society which also might be occasioned.''

Since that decision the Federal Reserve Act has been amended. Originally it authorized the Federal Reserve Board: ''To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator or registrar of stocks and bonds under such rules and regulations as the said board may prescribe.''

Section 11 (k) of the act was amended by Congress in September, 1918, so that the provision read as follows:

''To grant by special permit to national banks applying therefor, when not in contravention of state or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which state banks, trust companies, or other corporation which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

''Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by state banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of state or local law within the meaning of this act.''

It cannot be contended that Congress by this amendment took away from the courts of a State the right to

interpret its own statutes and to determine this particular question. The reasoning of the Supreme Court in the Fellows Case negatives the existence of any such authority on the part of Congress.

The petitioner argues that this amendment enlarges the authority of national banks, giving them authority to act in such matters where before the amendment they had none. On the contrary, the first paragraph of the amendment limits the exercise of that authority. Under the original act the authority to act as executor, etc., given to national banks was only when such function was "not in contravention of the state or local law." Under the first paragraph of the amendment it is not sufficient that it is not in contravention of the state law, but there must be *competition* with state institutions authorized to act in such fiduciary capacities, before a national bank has such authority.

The petitioner calls attention to the second paragraph of the amendment quoted as further limiting the right of the state to exclude national banks from acting in such capacities, by declaring that where the State gives such authority to state banks and trust companies or other corporations *"which compete with national banks"* the exercise of such power "shall not be deemed to be in contravention of the state or local laws." Some courts have held this to be a legislative interpretation of the authority granted and not binding upon the courts.

Relator says that it was not necessary for Congress to make any qualification; that it had a right to authorize national banks to act in fiduciary relations without any exceptions and regardless of the state law. It is sufficient answer to say that Congress has not seen fit to do so. On the contrary, Congress has dealt very tenderly with the supposed sensitiveness of states in regard to encroachment upon their authority. It is not contended and cannot be that that provision attempts to take away from the state courts the right to determine when the exercise of such powers is in contravention of state law, except to define one particular instance where it shall

not be so considered. It remains for the courts to say what is meant by the competition with national banks as mentioned in the act. That the provision relating to the contravention of state or local law is retained in the amendment shows an intent to give it some meaning, and that meaning is not taken away, by the attempted definition following. If the latter paragraph should be construed to state the entire case as to when national banks should be excluded from exercising such authorities, the use of the expression "not in contravention of the state or local law" would be superfluous.

We hold, therefore, that this court has the right and the duty to determine whether the office which the petitioner seeks to discharge is in contravention of the laws of this State.

IV. In consideration of the terms of paragraph 11 (k) of the Federal Reserve Act we must ascertain what Congress had in mind. Congress did not grant such powers to national banks because it claimed any right to provide for the custody of property which is within the constitutional control of the State. Congress had no intention to trespass upon State preserves. National banks were vested with such functions because they were necessary to enable them to "perform the services which were exacted from them and for which they were created." It was a matter of surviving against unequal competition. That idea is apparent in the act, and particularly in the amendment. Unless it was necessary to the proper discharge of its duties there was no reason why a national bank should act in fiduciary relations, and such functions would not be necessary unless the bank came in competition with the state institutions which would thereby have an advantage over their national competitors. This appears in the expressions where the act speaks of other corporations, "which come in competition with national banks . . . which compete with national banks." If state institutions of like character are denied the right

*Meaning of Federal Reserve Act.*

to exercise such functions national banks have no right to exercise them. It is in contravention of state law; that is, in contravention of the state legislative policy. It is only because national banks, by reason of an advantage given to state institutions, could not compete and survive that this authority is conferred upon them.

When Congress in the act speaks of competition of course it means competition on equal terms with state corporations. It cannot be that Congress intended national banks to have privileges and advantages which state institutions could not enjoy in matters relating to control of estates which are peculiarly within the state authority. The entire purpose of the act was not to give national banks an advantage, but to place them upon equal terms with competitive state banks. It was said by the Federal Supreme Court in the Fellows Case, 244 U. S. l. c. 426:

"This must be, since the State may not by legislation create a condition as to a particular business which would bring actual or potential competition with the business of national banks and at the same time deny the power of Congress to meet such created condition by legislation appropriate to avoid the injury which otherwise would be suffered by the national agency. Of course as the general subject of regulating the class of business just referred to is *peculiarly within the state administration control*, state regulation for the conduct of such business, *if not discriminatory* or so unreasonable as to justify the conclusion that they necessarily would so operate, *would be controlling upon banks chartered by Congress* when they came in virtue of authority conferred upon them by Congress to exert such particular powers."

This is a distinct recognition of our interpretation of the act. National banks have no right to exercise the fiduciary functions enumerated in the statute unless the State has discriminated against national banks in that respect and put them at a disadvantage. If national banks, without such authority, can compete successfully

State ex rel. Burnes Natl. Bank v. Duncan.

with state institutions, then under the terms of the act they have no right to demand the exercise of such functions.

V. In determining whether the exercise of fiduciary capacities by a national bank is in contravention of the state law it is not necessary to point to a specific statute which forbids the exercise of such functions by such banks or similar institutions of the State. If it is contrary to the policy of the State and plainly so appears from its statutory enactments, then it is in contravention of the state law. The legislative power of the State has not given authority to state banks to act as executors, administrators, etc., but has selected trust companies as the only and peculiar corporations to be invested with such trusts. This authority is not given to trust companies as a convenient incident to the conduct of their ordinary business. The Legislature was not considering the prosperity of trust companies, but was looking for the safety of certain important trust funds which are attended with the natural insecurity and danger of dissipation, making them the especial and peculiar concern of the law. The legislative purpose was not to confer a privilege upon trust companies but to seek additional sources of security for those funds. Hence the law-making body hedged about the custodians of such funds with restrictions, conditions and securities with which only a trust company could conveniently comply—restrictions which the state courts are powerless to impose upon national banks. National banks with the regulatory provisions in the Federal Reserve Act may be just as safe as the state trust companies. With that we have no concern. The propriety and expediency of statutes are for the sole determination of the legislative body. We must declare the legislative policy as we find it.

Now let us consider for a moment what that policy is:

(a) The Legislature has not given authority to act as executors and administrators to state banks, the nat-

ural inevitable competitors of national banks in the transaction of ordinary business.

(b) In giving this authority to trust companies it has provided in Section 11801, Revised Statutes 1919, Subdivision 5, that: "All investments made by any trust company of money received by it in any fiduciary capacity shall be at its sole risk, and for all losses of such money the *capital stock and property of the company shall be absolutely liable,*" except on certain unimportant conditions.

(c) Subdivision 8 of the said last mentioned section provides that the property held by a trust company in trust "shall not be mingled with the investments of the capital stock or other property belonging to such trust company or be liable for debts or obligations thereof."
For the purposes of that section the trust company is required to have "a *trust department* in which all the business authorized by the act" shall be kept distinct and separate from its general business.

(d) Subdivision 9, of the said section, provides that, unless otherwise provided in the instrument creating the trust, on certain of the money held by the trust company in a fiduciary capacity interest shall be allowed at not less than two per cent per annum, compounded annually.

(e) Section 11802, Revised Statutes 1919, provides that the directors may set apart a trust or guaranty fund, and provides for its investment. Section 11803 provides that the guaranty fund shall be absolutely pledged for the faithful performance of the duties of the trust company under the provisions of the act.

(f) Section 11838, Revised Statutes 1919, provides that when any company now doing business in this State, or which may hereafter be organized under the provision of this article relating to trust companies, . . . "which shall make with the bank commissioner a deposit of two hundred thousand dollars, . . . shall be permitted to qualify as guardian, . . . curator, executor, etc., without giving bond as such, and the fund so deposited with the bank commissioner shall be pri-

302 Mo. Sup.—10.

marily liable for the obligation of such company as guardian, curator, executor, etc.''

The Federal Reserve Act provides that the assets held by a national bank in a fiduciary capacity shall be segregated from the general assets of the bank and a separate set of books and records shall be kept which shall be open to inspection of the state authorities. It further provides that notes deposited or held in trust by the company ''awaiting investment'' shall be carried in a separate account and shall not be used by the bank in the conduct of its business unless first set aside in the trust department in United States bonds, etc., and in the event of the failure of such bank the owners of the funds held in trust for investment shall have a lien on the bonds. It further provides that when the laws of the State require corporations acting in fiduciary capacity to deposit securities with the state authorities, national banks shall be required to make similar deposits.

It cannot be contended that these regulations in any way conform to the requirements which the state law imposes upon trust companies. The extraordinary burden which trust companies carry by acting in a fiduciary relation is shown in Subdivision 5, in Section 11801, which makes all the capital stock and property of the company liable for the loss of trust funds. Nothing to compare with this appears in the Federal Reserve Act. The state requirement of trust companies further provides that money so deposited shall be a special deposit. It shall not be mingled with the investments of the capital stock nor with other money belonging to the trust company or liable for its debts, and two per cent interest shall be allowed on it. Not only must the money be kept separate and accounted for separately; *it is a separate department* and completely *independent in its management*, as if it were indeed a separate and distinct organization. When a trust company takes on the discharge of duties as executor, etc., it elects to conduct new business distinct from its trust company business, and to become peculiarly responsible for funds which have nothing to

do with and cannot add to the prosperity of its ordinary business, nor make the functional discharge of its regular business any easier or more effective. The trust company might fail with complete loss to all stockholders and depositors, and yet that would not affect in the least the security of the trust funds if the statute is complied with. A trust company, by reason of taking on this additional duty, and engaging in this outside business, is not competing with national banks *as a trust company*. It would be exactly the same as if the Legislature should attach such a function to probate courts. Considering then that the legislative department of the State has not seen fit to give such authority to state banks, and has not given such authority to trust companies as an aid to the conduct of their ordinary business, but has selected trust companies to discharge such duties only on condition that they create a separate and distinct operative agency, there is no such competition with national banks, as is contemplated in the Federal Reserve Act. The exercise of such functions by national banks is not necessary in the performance of the service for which they were created. We cannot admit that Congress intended to give national banks an advantage in competition with state banks.

The relator hastens to assure us that state authorities have no control whatever over national banks, except as permitted by the Congressional Act. This court has recognized that in the recent case of State ex rel. v. National Bank, 297 Mo. 397. The Legislature of this State cannot, by any means, require on the part of national banks a compliance with the conditions mentioned which reflect the legislative policy of the State, and national banks, restrained by the law of their organization, *cannot* comply with them. Thus it plainly appears that the relator cannot act as executor in this case because the exercise of such function would be in contravention of the state law.

VI. The authorities support the conclusion we have reached. The most important case, of course, is First

National Bank v. Fellows, 244 U. S. 416, referred to above. That case arose in Michigan where the Attorney-General brought a *quo warranto* proceeding against a national bank, 92 Mich. 460, questioning its right to act as trustee, executor, etc. The Supreme Court of Michigan held by a majority ruling, (a) that the provision in the Federal Reserve Act, sec. 11 (k), was not in contravention of the state law, neither of any express provision of the statute, nor of the legislative policy of the State, (b) but that the exercise of such function by a national bank was unconstitutional. The United States Supreme Court, where the case went on writ of error, gave special emphasis as quoted above, to the right of the State to determine the question of contravention. The court said (244 U. S. 1. c. 425), referring to the Michigan decision: "In view of the express ruling that the enjoyment of the powers in question by the national bank would not be in contravention of the state law," the State court proceeded upon the erroneous assumption that because a particular function was subject to be regulated by state law, "Congress was without power to give a national bank the right to carry on such functions." The United States Court then reversed the ruling, not because the Michigan Supreme Court erred in determining the question of contravention, but erred in holding that Congress had no constitutional right to invest national banks with such functions. The court then further indicated a deference to the power of the State to control its own affairs, as follows at pages 426-427:

"That the statute subjects the right to exert the particular functions which it confers on national banks to the administrative authority of the Reserve Board, giving besides to that board power to adopt rules regulating the exericise of the functions conferred, thus affording the means of coordinating the functions when permitted to be discharged by all national banks with the reasonable and non-discriminating provisions of state law regulating their exercise as to state corporations—

<div style="position: absolute; left: 0;">Review of
Authorities.</div>

the whole to the end that *harmony and the concordant exercise of national and state power might result."*

This is a definite statement of the United States Supreme Court that the rules regulating the exercise of the functions under consideration provided by the Reserve Board must coordinate with the state regulations. No doubt the conditions in Section 11 (k) were framed to meet the usual requirements and regulations to be expected in state statutes *"to the end that harmony and the concordant exercise of national and state power might result."* This seems to be a plain indication that if the State has regulations and exacts conditions for the exercise of these fiduciary powers, with which a national bank cannot comply and with which the state Legislature is powerless to compel compliance, then the exercise of such functions by a national bank is in contravention of the state law.

The case of the People v. Brady, 271 Ill. 100, is referred to in the cited cases and furnishes an important illustration of the subject. That was a mandamus proceeding at the relation of a national bank, asking a peremptory writ requiring the issuance to relators of a certificate of qualification to act as trustee, executor, etc. The Supreme Court of Illinois, in a very able and lucid opinion, held that the exercise of functions prescribed in Section 11 (k) were in contravention of the state law, pointing out as regulating the exercise of such functions the Illinois statutes which could not be applied to national banks. The opinion also denies the constitutional authority of Congress to regulate and provide for the exercise of fiduciary functions because they come strictly within the state control.

That decision was rendered before the Fellows Case got to the Supreme Court. After that ruling the same national bank brought another mandamus proceeding in the Illinois state court on the theory that in the Fellows Case the United States Supreme Court overruled the conclusion reached by the Illinois court in the Brady Case. That case came before the Supreme Court of

Illinois. [State ex rel. v. Russell, 283 Ill. 520.] The court then refused to grant the relief prayed on the ground that the former ruling was *res adjudicata,* and indicated (l. c. 524) that if it were not for the conclusiveness of the former judgment the court would be obliged to rule differently, conceding that the former judgment was erroneous. In that *obiter* statement the Illinois court shows a misunderstanding of the point decided in the Fellows Case. The only question considered in the Fellows Case and the only point upon which the Michigan Supreme Court was overruled was as to the constitutionality of the provision in the Federal Act. The Illinois court evidently failed to notice that the Federal Supreme Court did not pass upon the question of whether the Federal Act was in contravention of the law of Michigan so as to affect that question when applied to the Illinois law. As a matter of fact, under the ruling in the Fellows Case, the judgment in the Brady Case was not erroneous and would not have been sustained by the Federal Supreme Court if the question had got before it on the sole ground that the exercise of such powers by national banks in Illinois was in contravention of the state law. So that the ruling in the Brady Case is still the law of Illinois on that question.

The case of Aquidneck National Bank of Newport v. Jennings, 117 Atl. 743, is one wherein the Supreme Court of Rhode Island held that the provisions of Section 11 (k) were in contravention of the state law of Rhode Island. The court points out the statutes regulating the exercise of fiduciary relations such as are mentioned in Section 11 (k), and holds that the State cannot impose such regulations upon national banks and therefore the exercise of such functions by a national bank is in contravention of the state law. Rhode Island, like the State of Missouri, did not grant such powers to the state banks. The opinion says at page 746: "The extension by the General Assembly of this power to *trust companies, alone,* of all corporations, is plainly because the provisions governing their creation and their regu-

lation safeguard in a peculiar manner the rights of those beneficially interested in such trusts.''

The same may be said of the Missouri statutes in relation to that matter; the selection of trust companies alone and the peculiar manner of managing trust funds required, show that it is the legislative policy of the State that general banking institutions shall not be endowed with such functions. The brief of *amici curiae* calls attention to recent statutes of this State giving trust companies certain additional powers which make them competitors of banks in respects where they were not such competitors before. This does not alter the attitude of the State towards such institutions. Trust companies are selected as fiduciary agents doubtless because the Legislature deemed them best fitted to meet the rigid exactions which the statute imposes upon the exercise of such trusts.

In the Appeal of Henry W. Woodbury, 78 N. H. 50, the question came before the Supreme Court of New Hampshire. In that case there was an express statute forbidding the appointment of banking companies and trust companies as administrators and executors. The court held that the exercise of the fiduciary functions mentioned in Section 11 (k) of the Federal Reserve Act were in contravention of the state law. Of course there is no express denial in the Missouri statute, but the denial to banks of such functions is clearly implied and as emphatic as if there had been express denial.

No cases have been cited by petitioners in support of their position, when regulations and restrictions such as are imposed by the Missouri Legislature are present, where it has been held that the provisions of the Federal Reserve Act are not in contravention of the state law.

The Supreme Court of Pennsylvania, in the case of In re Turner Estate, 120 Atl. 701, held that the provisions of the Federal Act were not in contravention of the law of Pennsylvania, on the ground that the regulation of such fiduciary functions was in harmony with

the state regulations.    There were no such stringent regulations as are provided in our statute.    [Hamilton v. State, 94 Conn. 648.]    In re Estate of Stanchfield, 171 Wis. 553; In re Mollineaux, 179 N. Y. Supp. 90, are cited.    In each case the exercise of such powers was expressly granted to state institutions which act in direct and general competition with national banks in the exercise of their ordinary functions.

In the regulation of trust funds the Federal Act is in direct conflict with the Missouri statute, above pointed out.    Necessarily there would be a want of that "harmony and concordant exercise of national and state powers" which Chief Justice WHITE, in the Fellows Case, held was necessary in such cases.

We think that both reason and authority support the view that the exercise of fiduciary functions mentioned in Federal Reserve Act, Section 11 (k), are in contravention of the law of Missouri, the legislative policy, and the express statutes.

The peremptory writ is therefore denied.    All concur.

Headnotes 1 to 6:    Executors and Administrators, 23 C. J. sec. 73 (1926 Anno).