HERBERT L. CARPENTER, Atty. Gen. *vs.* AQUIDNECK NATIONAL BANK.

JULY 9, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

SWEETLAND, C. J. The above entitled proceeding is an information in the nature of *quo warranto*, prosecuted by the Attorney General for and in behalf of the State. Therein the court is informed that the defendant although prohibited by the laws of this State has been and is, by usurpation, exercising the powers of an executor, and also has been and is acting as trustee, and in other fiduciary capacities. The informant prays that judgment be entered against the defendant excluding and ousting it from the further exercise of such powers.

In its plea the defendant admits that it is acting as executor and as trustee as alleged in the information; but sets up that it is not so acting in contravention of the laws of this State; because such laws authorize and permit the exercise of similar powers by trust companies organized in the State, which trust companies compete with national banks located in the State. For support of its plea the defendant relies upon the provisions of the Federal Reserve Act of December 23, 1913, Section 11, sub-section k, as amended September 26, 1918, conferring upon the Federal Reserve Board authority "To grant by special permit to national banks applying therefor, when not in contravention

of State or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located. Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this Act.''

The defendant shows that in conformity with the Federal Reserve Act as amended it has been granted by the Federal Reserve Board the right to act, under the rules of the board, as trustee, executor, administrator or in any other fiduciary capacity in which trust companies which come into competition with it are permitted to act under the laws of the State of Rhode Island.

By the provisions of the statutes of this State, now Chapter 271, General Laws 1923, a trust company, established in accordance with our laws and which has conformed to the regulations therein prescribed, is empowered, among other things, to accept and execute all trusts committed to it by any person, corporation or court of this State or of the United States, and to accept and execute the office of executor, administrator, guardian of the estate and other offices, in the chapter named, having similar fiduciary character. Any court of probate in this State is empowered in its discretion to appoint such a trust company to either of said offices of trust. The power to act in such fiduciary capacity is not conferred by our law upon a State bank, savings bank, or any other corporation in this State; and probate courts are without jurisdiction under our statutes to appoint any corporation except such a trust company

to the offices of executor, administrator, guardian or the like.

When a national bank has the permission of the Federal Reserve Board, Congress has conferred upon such bank authority to act in a fiduciary capacity, and the authority to so act becomes a part of the corporate powers of the bank. Without question a national bank can exercise such corporate powers in this State when their exercise is not in contravention of our domestic law. Certain of the corporate powers which Congress has thus conferred upon national banks relate to trusts which arise in connection with offices requiring for their exercise the appointment of a probate court. Save as to such trusts we see no reason to question that a national bank may exercise in this State its corporate powers of a fiduciary nature which it has acquired in conformity with the act of Congress.

In *Aquidneck National Bank* v. *Jennings*, 44 R. I. 435, the defendant here, in an attempt to place itself on a parity with the trust companies of the State, sought by mandamus to compel the state treasurer to accept from it United States bonds in a certain amount, to be held by the treasurer as security for the performance by the defendant of its duties in a fiduciary capacity. The Federal Reserve Act provides that when the laws of a State require that a trust company of such state shall deposit securities for the protection of trusts held by that company, national banks in such state shall be required to make similar deposit of securities for the protection of private and court trusts held by them in their fiduciary capacity. In that petition for mandamus, without passing upon the corporate powers of this defendant bank to act as a trustee in this state, the court denied the petition. The denial was principally upon the ground that, without the sanction of the general assembly, nothing in the Federal Reserve Act can be regarded as regulating or extending the duties of the treasurer as one of the general officers of the State, and that Congress can not give the national banks in this State the right to demand that the

General Treasurer shall perform for their benefit the same duties which, under our law, he performs for trust companies in this State.

In *Aquidneck Bank* v. *Jennings, supra,* we have held that a national bank can not be admitted to an apparent standing of equality with trust companies. We can not say, however, that the exercise in this State by the defendant bank of its power to act in a fiduciary capacity is in contravention of our state law, save as to the execution of those trusts which arise in probate proceedings. In *Aquidneck National Bank* v. *Jennings, supra,* we declared that "the devolution of the estates of decedents, the control of the property of infants and lunatics, the jurisdiction of our probate courts, and the legal regulation of the trusts which arise in the administration of probate law are matters which pertain exclusively to the powers of a state over its domestic affairs. Under the state law no corporation other than a trust company, organized under the Rhode Island statute, may be appointed executor, administrator or guardian by our probate court or may accept and execute the duties of such office." . . . "In the absence of the express sanction of the general assembly the appointment of a national bank to execute the trusts which arise in probate proceedings, or the attempted execution of such trusts by a national bank, would be in contravention of our state law." In the case before us now, where the matter is directly pertinent to the issues, we are still of the same opinion. In conformity with its conclusion often stated, the Supreme Court of the United States declared in *Tilt* v. *Kelsey,* 207 U. S. 43, that "in respect to the settlement of the successions to property on death the states of the union are sovereign." *Yonley* v. *Lavender,* 88 U. S. 276; *United States* v. *Fox,* 94 U. S. 315.

In the Federal Reserve Act when first enacted it was provided that the Federal Reserve Board may grant to national banks the right to act as trustees, executors, administrators, guardians, etc., "when not in contravention of state or local law." This provision still remains. In *People* v. *Brady,*

271 Ill. 100, the court held that authority given by the Federal Board to a national bank to act as trustee or the personal representative of a decedent was in contravention of the law of Illinois. In *First National Bank* v. *Union Trust Co.*, 244 U. S. 416, the Supreme Court appeared to recognize the authority of the court of last resort of a state to construe the statutes of such state and to determine whether such authorization did contravene the local law. Apparently to meet this situation, in the interest of national banks, Congress in 1918 amended the Federal Reserve Act by passing the extraordinary amendment which became the last sentence of that portion of the act quoted above, as follows: "Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of state or local law within the meaning of this act." Our statutory provisions regulating the jurisdiction of probate courts in the issuing of letters testamentary and of administration, and in the appointment of custodians, and guardians are not of doubtful interpretation. It is the practice of the Federal Supreme Court to adopt the construction placed upon a state statute by the court of last resort of that state. We felt confident that the United States Supreme Court would not hold as valid and constitutional the amendment of 1918, which assumed arbitrarily to place a legislative construction upon statutes of a state, regardless of their positive terms, or the construction placed upon them by the supreme court of such state. In *Aquidneck National Bank* v. *Jennings, supra*, we said that "we do not admit the power of Congress to control this court in the construction of the state laws of· Rhode Island." It appears that we were not justified in our confidence as to the position which the supreme court would take in the matter. In the recent case of *State of Missouri* v. *Duncan*, 44 Sup. Ct. Rep. 427, opinion rendered April 28, 1924, the

United States Supreme Court, upon writ of error, reversed the action of the Supreme Court of Missouri. 257 S.W. 784. The Supreme Court of Missouri, in a carefully considered opinion, held that under the probate law of that state a national bank having a permit from the Federal Reserve Board could not be appointed and act as executor, and that the exercise of such fiduciary functions is "in contravention of the law of Missouri, the legislative policy and the express statute." The court further held in relation to the amendment of 1918, that: "It cannot be contended that congress by this amendment took away from the courts of a state the right to interpret its own statutes and to determine this particular question." Upon review in the United States Supreme Court it was held, in a majority opinion, that notwithstanding the provisions of the probate law of Missouri a national bank having a permit from the Federal Reserve Board may act as an executor if state trust companies competing with it have that power, and that "the state can not lay hold of its general control of administration to deprive national banks of their power to compete that congress is authorized to sustain." From the majority opinion Mr. Justice SUTHERLAND and Mr. Justice McREYNOLDS dissented. The vigorous opinion of Mr. Justice SUTHERLAND, based upon the former decisions of the Supreme Court, and the just relation which exists under the constitution between the powers of congress and those of the state authorities in matters of local concern, appears to us to be eminently sound and convincing. In conclusion he says, "The probate courts of a state have only such powers as the state legislature gives them. They are wholly beyond the jurisdiction of congress, and it does not seem to me to be within the competency of that body, on any pretext, to compel such courts to appoint as executor or administrator one whom the state law has declared shall not be appointed. The particular invasion here sanctioned may not be of great moment; but it is a precedent, which, if carried to the logical extreme, would go far towards reducing the States of the Union to the status of mere

158

geographical subdivisions. The case is one, to use the phrase of Mr. Justice BREWER in *Fairbank* v. *United States*, 181 U. S. 283, 291-2, for the application of the maxim *obsta principiis*, not *de minimis non curat lex*."

The final determination of the constitutional validity of congressional action is in the Federal Supreme Court. The matter presented here is in all respects identical with that before the Supreme Court of Missouri and the United States Supreme Court in the cases we have just considered. In the case before us we are constrained to be governed by the majority opinion in *State of Missouri* v. *Duncan, supra*. Therefore our determination is that the defendant should not be ousted from the further exercise of the power alleged in the information.

Judgment is entered for the defendant.

*Herbert L. Carpenter, Atty. General, George Hurley, Asst. Atty. General*, for petitioner.

*Sheffield & Harvey, William W. Moss*, for respondent.